Good morning, I'm John Rhodes from the Missoula Office of the Federal Defenders. I represent Derek Trumbull. Get closer to the microphone. Is this better, your honor? Yes, right, much better. Thank you, sir. Good morning, your honors. I'm John Rhodes from the Missoula Office of the Federal Defenders of Montana. I represent Derek Trumbull. I would like to reserve two minutes for rebuttal. To interpret a guideline, the court must look at the text, the structure, the history, and purpose of the guideline. Here, the critical term that the court is interpreting is large capacity magazine. The focus is on large. We know what dictionaries told us that as we brief that large is a relative term, it means excessive, relatively, a greater capacity, extensive. Here, the industry standard for handguns in America is far more than 15 rounds. What do you base that on? We cited articles from 2022, well, one article that said nine of the 10 most popular handguns in America sold in 2022 can have a magazine capacity in excess of 15 rounds. So, I want to ask you about that because you cited a blog called the Firearm Blog's List of Best-Selling Handguns on GunBroker.com for 2020. So, we looked at all the firearms on there, and you can correct me if I'm wrong about this, but according to the list I have here, there's only one firearm on there that has a standard round of more than 15. There are many of the weapons on here have standard capacity of 6, 12, 7, 10. Very few of them actually exceed 15. So, when you say standard capacity, it may come with that, but it can attach, it can take a greater rounds. Like a Colt 1911, which is a standard handgun for more than 100 years now. Yes. Very rare for that handgun to have more than 15 rounds, correct? Yes, but we're dealing with the 21st century gun market and 21st century gun ownership in America. And here it was a Glock 17, which this court in the Duncan opinion recognized as one of the most popular handguns in America. But there are many other handguns you would agree that do not normally have a 16 plus magazine, correct? Well, it's the capacity. It's not the magazine that is sold with the gun, it's large magazine capacity. And so, the guns that your honor referenced have the capacity for greater than 15 rounds. Let me ask you a question a different way, because of course large is a comparative term. Would it be unreasonable to think that a salesman presenting this Glock would say to the customer or propositor, this has got a large capacity? I don't believe a salesman would say that. Why would not a salesman say that? Because it seems to me it's a large capacity. I think it would just be standard. It's the norm. A Glock 17 is a... conceding for the moment that it's standard. Why wouldn't the salesman say this is the standard capacity and it's very large. Have a look. Look how many bullets you can keep. And that's our point that the standard capacity is greater than 15 rounds. No, I understand that's exactly your point. But my point is in the standard usage of the word large, one might say large even though the norm is large. That's our point, is that the norm cannot be large, the standard cannot be large. I understand that's your point. I've got a slightly different point and that is it does not seem to be an unusual use of the term large to say, you know, the standard capacity of these things is pretty large. And that gets to the structural problem with this guideline. If the perhaps for the reasons you just articulated, that's something that should have been done in the guideline itself. Instead, the commission following the lapse of the assault weapons ban didn't do any empirical investigation. It had no reasoned explanation. It didn't use any fair and considered judgment that it articulated. Instead, it just said greater than 15 magazine capacity is large. And if the commission wants to do that, that's something that should be in the guideline itself for the structural separation of powers reasons that are recognized and reaffirmed in Kaiser. And then this court at the end of its Castillo opinion had a whole section about the threat to separation of powers when a regulatory agency is interpreting its regulation by putting something into its interpretation category that's not reviewed by Congress. And that's the fundamental problem here. The point you're making your honor, perhaps there is some ambiguity in large. And I think that's the point you're making by the sales pitch. But ambiguity supposes two meanings. Large is a relative term, you said. Yes. Is it ambiguous? What's the other meaning that is ambiguous? That's where you get to the line drawing since we're dealing with a numeric situation. And that's where the other Court of Appeals, the D.C. Circuit, the Seventh Circuit has said a regulatory agency cannot use a numeric interpretation to draw a line. That's a legislative function. That's something the legislature can do. And then, of course, if the citizens don't like it, we have the democratic process to change it. Here's another way of thinking about the definition of large. Large in comparison to the purpose for which you might want to use it. So when people are using this, do they typically use all 15 or do they just shoot two or three times? I mean, so it may be large in comparison to how often they would use the total capacity. So in other words, I think there are a fair number of meanings of large that are different from the meaning that you're proposing. I understand your argument. It's a good one. But it seems to me that large can mean other things. That's exactly what the commission concluded following the assault weapons ban when Congress directed the commission to investigate, study the use of semi-automatic firearms, which is what we're talking about with these handguns relative to crimes of violence and drug traffic offenses. And what the commission concluded, and this is briefed, is that it depends on the circumstances. It depends on how the gun was deployed. And how do we know how often the full 15 are used? No, that's more than 15. Actually, it's not 15. It's more than 15. That's the problem with this commentary is there was no investigation that we know of. Nothing's documented. There's no explanation, no empiricism, no fair and considered judgment. It's just a number that appears to be pulled out of thin air, which is exactly what a regulatory agency can't do because it's basically becoming the legislature. And what the commission should do, which is what it did following the court's opinion in Castillo, is move this commentary into the guideline itself. And then it's subject to congressional review, at least theoretically or structurally subject because the commission promulgates guidelines in April or May, and they take effect by November 1st. I was on the panel in Castillo. This is a very different case from Castillo. They basically added a new offense. Yeah. Well, and that's our point. They have created law in the commentary. Yeah. But Castillo is such a different case. It was not just giving some different definition or some elaboration on a word that's already there. They just invented a new offense and put it in footnotes. And the main point of Castillo's relevance here is the last section of Castillo's talking about the threat to the separation of powers. I understand that. But if we're talking about the case itself, that was a very different case. I'll give you rebuttal time. This is a three-way, but this is kind of a more than a three-way. If I may ask, what relief are you seeking in this case? We're asking that the court invalidate the commentary. Right. But that's not relief. What relief are you seeking? Then send it back to the district court for resentencing. Okay. And so what would you be asking to resentencing? So this goes to the court's order and I represent my client. He wanted to pursue the appeal. He's in state prison. So what I would be asking for is a reduced term of supervised release. Okay. So let me start there. So at sentencing, the big push to the district court was don't incarcerate this guy, give him supervised release because that's what he needs. ER 36, I think you said supervised release can be a more effective criminal justice tool in terms of fulfilling the 3553A factors. In his letter to the court, which is in the PSR, he talks about the need for counseling. In the sentencing memo, we talk about the need for treatment. If this to go back to the district court and no one ever asked for less than three years supervised release, correct? Correct. Okay. So wouldn't it be an unreasonable sentence on remand for Judge Christensen in light of all of that and your client's record of seven convictions and multiple violations of state supervised release to give him less than three years? Wouldn't we just be reversing that decision if you actually got the relief you wanted? There's a new fact, your honor. Since then, my client's been sent to the Montana state prison under a new sentence. So I don't know his exact eligibility date. I know he was denied parole at his first hearing, but if he was paroled, say at the next hearing, then he would have that parole supervision term in the community. So that would answer the court's concerns regarding providing him the social services that he undoubtedly needs. Fair enough. All right. We'll go ahead and give you two minutes for rebuttal. Thank you, your honor. Good morning. May it please the court. Carla Painter on behalf of the United States for the District of Montana. It is undisputed that Trumbull was a felon in possession of a firearm and that he had four magazines capable of holding 16 or more rounds of ammunition on himself or in his vehicle. These facts subjected Trumbull to an increase in his base offense level under the definition supplied by the Sentencing Commission. Accordingly, there's only two questions before the court today. The first is, is the term large capacity magazine ambiguous? And the second is, is the definition provided by the Sentencing Commission reasonable? And the definition of ambiguity, as we know from Kaiser, is that it's susceptible to more than one reasonable interpretation. What are the two meanings of large? Your honor, it doesn't have to be two, but susceptible. Maybe give us five meetings of large. And your honor, I think that some of the definitions provided by the state legislators, certainly what Congress determined to be large capacity. Is there any single definition of large, which is numeric? There is. Where? The assault weapons ban referenced in our brief, where Congress said large capacity means capable of accepting more than 10 rounds. We've cited that the state legislatures. Is that applicable to this case? I think the court can consider common sense and its determination of what is large capacity. You also look at firearms. Common sense is sometimes the last refuge of the evidence. Your honor, I would like to draw the court's attention to Amendment 531. Now, Mr. Trumbull cited this in his opening brief, and he actually laid out the language on pages 15 and 16 in a footnote. Mr. Trumbull focused on language pertaining to semi-automatic firearms and indicated that those fall within the heartland. However, in that same paragraph, the commission went on to explain that dangerousness depended on the caliber of the weapon and magazine capacity. And there, the commission actually stated some semi-automatic firearms can have cartridges containing up to from 14 to 18 rounds in their magazine. Now, just so the court is aware, that language I'd submit implicates their substantive expertise. But more importantly, that was the reason for the amendment for the policy statement from back in 1997, where the commission said large capacity, they actually termed that high capacity, means more than 10 rounds. So we have some reasoning going into this decision. Now we're dealing with a definition that's significantly more narrow. Judge Owens, as you pointed out, not every case involves this type of magazine. And in fact, this is the first time in my career as a federal prosecutor where I've had multiple, four. And in my experience at sentencing, as I noted at the district court below, this is not an everyday occurrence that a defendant has a large capacity magazine. I think conservatively estimating, I would say between 15 and 20 percent of these cases involve these large capacity magazines. So we know the term large capacity magazine is ambiguous. So the question then turns to... I don't know if it's ambiguous so much as it's... I understand you're... I know you're trying to fit it into the jurisprudence of ambiguous. I would say that it may be capacious and large can mean a range. So where within that range are we talking about? That's where we go to the reasonableness of that interpretation. And that's why we cited the state legislators that have looked at this very issue. How do we define large capacity magazine? Now, it doesn't matter that every state has not decided to prohibit large capacity magazines, but those that had a reason to define that term have stated it falls anywhere from more than 10, more than 15, to more than 17. And the vast majority of those states said it's more than 10. Indeed, Congress told us that with the assault weapons ban. There were two to three states that said it's more than 15. There was only one state that said it's more than 17. So I think that falls within the zone of ambiguity as Kaiser told us to look to. So because it falls within some reasonable definition of large capacity magazine, we decide whether or not that should be entitled to deference. And you'll notice in Trumbull's brief, he doesn't really engage in the three Kaiser factors that should inform that decision. He does concede the first one that pertains to page 14 of his reply brief, that this is in fact the commission's official position. The second factor is whether or not it implicates the commission's substantive expertise. And this factor is actually asking, does this job fall within this particular agency, the Sentencing Commission? And here, I think there's no question that that's the case. We've laid out the statutory framework allowing for the Sentencing Commission what they're supposed to do, what they are charged with doing is determining what are some of these factors that increase the dangerousness of a person's conduct and giving the sentencing court the ability to enhance sentencing exposure for that. So no matter how you choose to define large capacity magazine, there can be no question that a firearm in the hands of a prohibited person, in this case, Mr. Trumbull was a felon, that has the ability to shoot many rounds quickly without reloading is a dangerous and aggravating circumstance. So we know that this falls within the bailiwick of the Sentencing Commission. Now the court can determine whether or not to depart or vary from that guideline range, but the Sentencing Commission is tasked with giving us that range. The third element is fair and considered judgment. And in Kaiser, the court spent a lot of time talking about what that was not. That was essentially coming up with an explanation or interpretation after the fact, not giving any of the parties fair warning or fair notice. We know that's not the case here because it was actually Amendment 691 that altered the language from more than 10 to more than 15. Amendment 691, as I walked the court through in my brief, changed everything. The base offense levels, the policy statements, and it specifically referred to the definition of large capacity magazine. It referenced the assault weapon ban, so we know that was on the Commission's mind when they decided to increase large capacity magazine to more than 15. But I also want to point out that all three of these things, the guideline language change, the policy statements, and the commentary, that was subject to Congress congressional approval. Now it's not required to be, but here it was. And that's important because Kaiser tells us that when an interpretation is provided contemporaneously with the actual language of the guidelines, the case for agency deference is stronger. Here we know that's exactly what happened. The Commission changed the language from high capacity to large capacity. It pointed us to the definition that says this is what large capacity means, and it updated the policy statement. One final note I want to make regarding the policy statement versus the base offense level. Mr. Trumbull has noted that under the policy statement, the court has discretion to depart upwards or downwards. The reason for that is because in those instances, we're talking about an individual that has used one of these firearms in either a crime of violence or a controlled substance offense. Now that is different from a person such as Trumbull who was never supposed to have a firearm in the first place. He was prohibited from owning or possessing any firearm. So there obviously the Commission decided that warrants an automatic increase base offense level, but certainly courts should always consider it, especially when they're sentencing for crimes of violence and controlled substance offenses. And so counsel, the notes of the commentary in this case did go through notice and comment, correct? They did, your honor. So this case is really about whether it should be on one page of the book or a different page of the book. Of this book. I mean of this book, right? It's just a matter of where it's going to appear in the book. Exactly, your honor. And the fact that it's mentioned in three different places and the application note is specifically addressed in that process. I think there's no question here that the agency should be entitled to deference. And then my other question for you is, this is the big question, which I don't think we're going to answer in this case, but after Booker and after Beckles, why does any of this matter? Well, the guidelines are a starting point and it's not lost on me that I advocated for this base offense level to apply. And of course the district court very down and imposed a shorter sentence. But I think it does matter because it gives a frame of reference and the guidelines I think do guide courts to a certain extent, but you are correct that pre Booker, I think this would have been more important as far as addressing what a judge can or should do. I mean, I looked at the sentencing transcript and I didn't see Judge Christensen ever say, well, the reason why I'm going to give you this sentence is because this was a large capacity magazine. Did I miss something there? No, your honor. And you're correct. I know Judge Christensen is quite thorough in going through the factors, but I think he addressed that when he decided this is a large capacity magazine and that factored into his equation. But I think certainly the other circumstances here, the amount of ammunition, the types of magazines should have gone into that decision. All right. Thank you, counsel. Thank you, your honors. Thank you, your honors. First, it's a myth that this commentary was reviewed by Congress. That's not required in the enabling legislation. It's only the guidelines. That point was made very clearly in Castillo. So I don't think that's a factual or procedural basis for the court to adjudicate this issue. Second, with respect to the numeric bright line rule that the commission just made up, the assault weapons ban expired. It expired over 20 years ago or 20 years ago. And the government referenced the vast majority of states. It's 14 states that it briefed that have a magazine limit in terms of legality. 14 states and no federal law is not the vast majority of states. With respect to amendment 531, that was the amendment that was directed as part of the assault weapons ban where Congress said sentencing commission studied the use of semi-automatic firearms relative to crimes of violence and drug trafficking offenses and the commission focused on how the gun was used. In the reason for amendment, it talks about armed robberies at close range, drive-by shootings. Here, the gun wasn't arguably used at all. Mr. Trumbull was passed out in his vehicle for three hours in a hotel parking lot with the vehicle running when there was a welfare call and a welfare check. So the gun wasn't used in the sense in any way. So that's something that's not part of the analysis. Finally, with respect to the zone of ambiguity, that's our point. When industry norms, industry standards are more than 15 rounds, it's outside of the zone of ambiguity and unreasonable to have a lower threshold than, for instance, here, the Glock 17, which again, this court recognized is one of the most popular handguns in America. So for those reasons, your honor, we're requesting that the court vacate Mr. Trumbull's sentence and remand for resentencing. All right. Thank you, counsel. Thank you both for your briefing and argument. This matter is submitted.
judges: FLETCHER, BEA, OWENS